IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

Tavaris Cain,                          )
                                       )
        Petitioner,                    )
                                       )
v.                                     )    Case No. 1:25-cv-1324 (RDA/WBP)
                                       )
Acting Warden Bienemy,                 )
                                       )
        Respondent.                    )

MEMORANDUM OPINION

This matter comes before the Court on Respondent Acting Warden Bienemy's ("Respondent") Motion for Summary Judgment ("Motion") of Petitioner Travaris Cain's ("Petitioner") *pro se* petition for writ of habeas corpus, filed pursuant to 28 U.S.C. § 2241.[1] Dkts. 11, 12, 13. Cain ("Petitioner" or "Cain") challenges the Federal Bureau of Prisons' ("BOP") denial of his application to have his First Step Act ("FSA") time credits "applied to [his] prelease custody date." Dkt. 1 at 2, 6–7; 2 at 11–12; Dkt. 5 at 8. On December 15, 2025, Respondent filed his motion for summary judgment, with a supporting brief and exhibits. Dkts. 10-11. On April 22, 2026, Petitioner was advised of his rights under *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), (Dkt. 14) but did not respond to the Motion. Accordingly, this matter is ripe for disposition. For the reasons stated below, the Motion will be granted.

---

[1] Respondent filed, in the alternative, a motion to dismiss. Dkt. 10-13. Although the motion to dismiss would also be dispositive, resolving this matter via the motion for summary judgment provides a clearer picture of the proceedings at FCI-Petersburg. The motion to dismiss will be dismissed as moot.

## I. Standard of Review

Title 28 U.S.C. § 2241(a) provides that "[w]rits of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." Under § 2241, federal courts may consider "not only constitutional claims but claims of statutory interpretation as well." *Bowrin v. U.S. INS*, 194 F.3d 483, 487 (4th Cir. 1999) (citing *Goncalves v. Reno*, 144 F.3d 110, 123-24 (1st Cir. 1998)). In addition, "attacks on the execution of a sentence are properly raised in a § 2241 petition." *In re Vial*, 115 F.3d 1192, 1194 n.5 (4th Cir. 1997) (citing *Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996)); *Hanahan v. Luther*, 693 F.2d 629, 632 n.1 (7th Cir. 1982)). After receiving a petition and the respondent's response, "[t]he court shall summarily hear and determine the facts[] and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[2] "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). As the Fourth

---

[2] *Banoub v. Crawford*, 819 F. Supp. 3d 477, 484 n.11 (E.D. Va. Dec. 23, 2025) ("Rule 1(b) of the Rules Governing § 2254 Cases permits this Court to apply the Rules Governing § 2254 Cases to petitions under 28 U.S.C. § 2241.") (citing *Aguayo v. Harvey*, 476 F.3d 971, 976 (D.C. Cir. 2007)); *see also Walker v. True*, 399 F.3d 315, 319 (4th Cir. 2005) (observing that under Rule 11, Rules Governing § 2254 Cases, that "[t]he Federal Rules of Civil Procedure, to the extent that they are not inconsistent with these rules, may be applied when appropriate, to petitions filed under these rules.") (citing Fed. R. Civ. P. 81(a)(2) ("These rules are applicable to proceedings for . . . habeas corpus . . . to the extent that the practice in such proceedings is not set forth in the statutes of the United States, the Rules Governing Section 2254 Cases, the Rules Governing Section 2255 Proceedings, and has heretofore conformed to the practice in civil action.")).

2

Circuit has noted, summary judgment allows courts "to avoid useless trials where material facts are not disputed and the law points unerringly to the conclusion that one of the parties is entitled to judgment as a matter of law," *Utility Control Corp. v. Prince William Constr. Co.*, 558 F.2d 716, 719 (4th Cir. 1977). Summary judgment is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Respondent, pursuant to Federal Rule of Civil Procedure 56, filed his statement of undisputed material facts. Petitioner, however, has failed to comply with his obligations under Rule 56 to submit statements of undisputed and disputed facts. *See Carlson v. Boston Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017) ("The responsibility to comb through the record in search of facts relevant to summary judgment falls on the parties—not the court."); *Malina v. Baltimore Gas & Elec. Co.*, 18 F. Supp.2d 596, 604 (D. Md. 1998) ("[I]t is the responsibility of the plaintiff, not the court, to identify with particularity the evidentiary facts existing in the record which can oppose the defendant's summary judgment motion. The court . . . is not required to independently comb the record to look for them."); *see also Amnesty America v. Town of West Hartford*, 288 F.3d 467, 470-71 (2d Cir. 2002) ("Fed. R. Civ. P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute . . . . Nothing in the federal rules mandates that district courts conduct an exhaustive search of the entire record before ruling on a motion for summary judgment . . . .").[3]

The Court accepts Respondent's statement of facts as true because Petitioner has failed to

---

[3] The summary judgment record of admissible evidence includes the affidavits and unobjected to documents submitted in support of the motion for summary judgment, Dkt. 12-1, and Dkt. 1.

rebut any of the facts set forth by Respondent. *Gholson v. Murray*, 953 F. Supp. 709, 714 (E.D. Va. 1997); *see also Integrated Direct Mktg., LLC v. May*, 129 F. Supp. 3d 336, 345 (E.D. Va. 2015) ("In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine facts in opposition to the motion.") (quoting E.D. Va. Loc. Civ. R. 56(B)), *aff'd*, 690 F. App'x 822 (4th Cir. 2017); *see also JDS Uniphase Corp. v. Jennings*, 473 F. Supp. 2d 705, 707 (E.D. Va. 2007) (movant's statement of undisputed facts is deemed admitted where nonmovant's response fails to "identify with any specificity which facts, if any, were disputed") (citing E.D. Va. Loc. Civ. R. 56(B)).

Petitioner's petition presents an issue of statutory interpretation. He argues that he is eligible under 18 U.S.C. § 3624(g) for his earned FSA time credits to be applied to his prelease custody date because

> [t]ime credits earned under this paragraph by prisoners who successfully participate in recidivism reduction programs or productive activities *shall* be applied toward time in prerelease custody or supervised release. The Director of the Bureau of Prisons shall transfer *eligible prisoners*, as determined under section 3624(g) [18 USC § 3624(g)], into prerelease custody or supervised release.

18 U.S.C. § 3632(d)(4)(C) (emphasis added). Petitioner argues that BOP's failure to apply his time credits violates the FSA. Dkt. 1 at 2-7.

## II. Undisputed Facts

The relevant facts are not in dispute, and the pertinent statutes are set out herein.

1.    On July 21, 2022, Petitioner was convicted of Conspiracy to Distribute More Than One Kilogram of Heroin and More Than Five Kilograms of Cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846; 18 U.S.C. § 2 and sentenced to 120 months in prison. *United*

*States v. Cain*, No. § 2:19-cr-00120-JPS-3 (E.D. Wis.). Dkt. 5 at ¶ 4.

2.      Petitioner is currently detained at FCI-Petersburg, and his current release date is October 02, 2027. *See* https://www.bop.gov/inmateloc (search Register Number: 17047-089; last viewed July 21, 2026).[4]

3.      The FSA directed the Attorney General to develop a Risk and Needs Assessment System (the "System") to

(1) determine the recidivism risk of each prisoner as part of the intake process, and classify each prisoner as having minimum, low, medium, or high risk for recidivism;

(2) assess and determine, to the extent practicable, the risk of violent or serious misconduct of each prisoner;

(3) determine the type and amount of evidence-based recidivism reduction programming that is appropriate for each prisoner and assign each prisoner to such programming accordingly, and based on the prisoner's specific criminogenic needs, and in accordance with subsection (b);

(4) reassess the recidivism risk of each prisoner periodically, based on factors including indicators of progress, and of regression, that are dynamic and that can reasonably be expected to change while in prison;

(5) reassign the prisoner to appropriate evidence-based recidivism reduction programs or productive activities based on the revised determination to ensure that—

(A) all prisoners at each risk level have a meaningful opportunity to reduce their classification during the period of incarceration;

(B) to address [ ] the specific criminogenic needs of the prisoner; and

(C) all prisoners are able to successfully participate in such programs;

(6) determine when to provide incentives and rewards for successful participation in evidence-based recidivism reduction programs or productive activities in

---

[4] *United States v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017) ("This court and numerous others routinely take judicial notice of information contained on state and federal government websites.") (citing *Hall v. Virginia*, 385 F.3d 421, 424 n.3 (4th Cir. 2004); *Garling v. U.S. Envtl. Prot. Agency*, 849 F.3d 1289, 1297 n.4 (10th Cir. 2017); *Swindol v. Aurora Flight Scis. Corp.*, 805 F.3d 516, 519 (5th Cir. 2015)).

5

accordance with subsection (e);

(7) determine when a prisoner is ready to transfer into prerelease custody or supervised release in accordance with section 3624; and

(8) determine the appropriate use of audio technology for program course materials with an understanding of dyslexia.

18 U.S.C. § 3632(a) (footnote omitted).

4.    The recidivism risk assessment, or PATTERN scoring, considers multiple risk items such as an inmate's current age, criminal history points, history of violence, and programs completed, among other factors. Some items, such as criminal history points, receive positive scores (*i.e.*, 40), while other items, such as programs completed, receive negative scores (*i.e.*, -12). *See* BOP: First Step Act, Resources (https://www.bop.gov/inmates/fsa/pattern.jsp) (last viewed, July 21, 2026). The risk items that receive negative scores reduce an inmate's overall risk scores, which will in turn assist an inmate in reducing his recidivism risk level designation (*i.e.*, from a "high risk" to a "medium risk'). As such, PATTERN scoring considers both dynamic and static risk factors and is designed to change throughout an inmate's incarceration by addressing these dynamic factors. An inmate will receive one of the following risk level designations: minimum, low, medium, or high. The BOP is required to update the risk assessment for each inmate periodically. Dkt. 12-1 at 2-3.

5.    Inmates with a "high risk" or "medium risk" recidivism level are generally not eligible for the application of FSA time credits toward early transfer to prerelease custody and/or early release to a term of supervised release.

6.    Title 18 U.S.C. § 3624(g)(1), limits application of the time credits as follows:

(1) Eligible prisoners.—This subsection applies in the case of a prisoner (as such term is defined in section 3635) who—

6

(A) has earned time credits under the risk and needs assessment system developed under subchapter D (referred to in this subsection as the "System") in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment;

(B) has shown through the periodic risk reassessments a demonstrated recidivism risk reduction or has maintained a minimum or low recidivism risk, during the prisoner's term of imprisonment;

(C) has had the remainder of the prisoner's imposed term of imprisonment computed under applicable law; and

(D)(i) in the case of a prisoner being placed in prerelease custody, the prisoner--

(I) has been determined under the System to be a minimum or low risk to recidivate pursuant to the last 2 reassessments of the prisoner; or

(II) has had a petition to be transferred to prerelease custody or supervised release approved by the warden of the prison, after the warden's determination that--

(aa) the prisoner would not be a danger to society if transferred to prerelease custody or supervised release;

(bb) the prisoner has made a good faith effort to lower their recidivism risk through participation in recidivism reduction programs or productive activities; and

(cc) the prisoner is unlikely to recidivate; or

(ii) in the case of a prisoner being placed in supervised release, the prisoner has been determined under the System to be a minimum or low risk to recidivate pursuant to the last reassessment of the prisoner.

The statute provides two means by which earned time credits may be applied toward transfer to prerelease custody: an inmate must (1) have been determined to be at minimum or low recidivism risk for his or her last two assessments, *see* 18 U.S.C. § 3624(g)(1)(D)(i)(I); or (2) have had a petition granted by the warden of the prison, in accordance with the findings required under 18 U.S.C. § 3624(g)(1)(D)(i)(II).[5]

---

[5] One court addressing similar claims, refers to the two means by which time credits can

7

7. An inmate with a "high risk" or "medium risk" recidivism level may request the application of their FSA time credits by initiating such a request by submitting an Inmate Request to Staff to his Unit Manager at his regularly scheduled Program Review. Dkt. 12-1 at ¶ 14.[6]

8. By July 2024, Petitioner alleges he had earned 330 FSA time credits toward early release that the BOP failed to apply to his prerelease custody date pursuant to BOP's Program Statement 5410.01, which interpreted 18 U.S.C. § 3632(d)(4). Dkt. 1 at 4.[7]

9. On July 12, 2024, staff at FCI-Petersburg conducted a risk assessment to determine Petitioner's risk level. Dkt. 12-1 at 9. Petitioner's score placed him in the "medium risk" recidivism level. The FSA credits were therefore not applied. *Id.*

10. Petitioner's last two Program Reviews occurred on January 6, 2025, and July 10, 2025. *Id.* at ¶ 15.

11. During these Program Reviews, Petitioner neither inquired about nor submitted a request regarding the application of his FSA time credits. *Id.* at ¶ 16.

12. On October 7, 2025, subsequent to filing this petition, staff at FCI-Petersburg

---

be applied as Option One (18 U.S.C. § 3624(g)(1)(D)(i)(I)), and Option Two (18 U.S.C. § 3624(g)(1)(D)(i)(II)). *See Barrios v. Bienemy*, 2026 WL 1092254, at *5-6 (E.D. Va. Apr. 22, 2026).

[6] See BOP Program Statement 5410.01, First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4) at 16, https://www.bop.gov/policy/progstat/5410.01_cn2.pdf (last viewed, June 8, 2026).

[7] The FSA allows eligible inmates who successfully complete evidence-based recidivism reduction ("EBRR") programs to receive time credits toward time in pre-release custody or on supervised release. 18 U.S.C. § 3632(d)(4)(A), (C). Under the FSA, eligible inmates "may earn, '10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.'" 18 U.S.C. § 3632(d)(4)(A)). Once earned, FSA time credits can be applied towards an inmate's early transfer to prerelease custody and/or early release to his term of supervised release. 18 U.S.C. § 3632(C).

conducted Petitioner's most recent risk assessment to determine his risk level; he was assigned a "high risk" recidivism level. *Id.* at 27.[8]

## II. Discussion

Petitioner's argument fails because although he may earn good time credits, his medium-risk recidivism level, by statute (18 U.S.C. § 3624(g)(1)(D)(i)-(ii)) and not policy as he argues, BOP is precluded from applying his FSA time credits. *See, e.g., Brown v. Garrett*, 2022 WL 1816160, at *3 (N.D. Ala. Dec. 22, 2022) (rejecting petitioner's argument that "she 'will never be a [l]ow or [m]inimum risk due to [her] past criminal history'" and explaining, "[w]hile [the petitioner] is free to earn time credits as an inmate with a medium risk recidivism level, under 18 U.S.C. § 3624(g)(1)(D)(i)-(ii), the BOP cannot apply those time credits to her sentence unless and until she has a minimum or low risk recidivism level for two consecutive assessments for prerelease custody or a minimum or low risk recidivism level for the last assessment for supervised release."), *R&R adopted*, 2023 WL 130519 (N.D. Ala. Jan. 9, 2023). "[T]he FSA expressly provides that while an inmate who has a PATTERN score of medium or high risk of recidivism is eligible to complete EBRR programs and PAs [Productive Activities], the successfully completed programs and PAs are not applied towards the inmate's time credits until [he] has received a minimum or low risk PATTERN score for two consecutive assessments." *Id.* (citing 18 U.S.C. § 3624(g)(1)(D)(i), (ii)). "[A]ll BOP inmates receive such reviews every 180 days." *Torok v. Beard*, 2022 WL 2703836, at *1 (D. Md. July 12, 2022).[9]

---

[8] On January 5, 2025, Petitioner was issued an incident report for committing prohibited act 112: use of drugs or alcohol. Specifically, Petitioner provided a urine sample on that tested positive for the presence of marijuana. Petitioner was sanctioned by the hearing officer to the loss of 41 days of good-conduct time on February 4, 2025. *Id.* at 25.

[9] The Fourth Circuit affirmed the district court's decision in *Torok* holding that

For early transfer to supervised release, § 3624(g) requires that the inmate "has been determined under the System to be a minimum or low risk to recidivate pursuant to the last reassessment of the prisoner." 18 U.S.C. § 3624(g)(1)(D)(ii). In eligible inmates, those assigned a "medium risk," or "high risk" recidivism level, will only be eligible for the application of FSA time credits if the inmate petitions the Warden and the Warden determines that:

> (i) The prisoner would not be a danger to society if transferred to prerelease custody or supervised release;
>
> (ii) The prisoner has made a good faith effort to lower their recidivism risk through participation in recidivism reduction programs or productive activities; and
>
> (iii) The prisoner is unlikely to recidivate.

*See* 18 U.S.C. § 3624(g)(1)(D)(i)(II); 28 C.F.R. § 523.44(c)(2). *See, e.g., Barrios*, 2026 WL 1092254, at *5 (Section 3624(g)(1)(D) "unambiguously mandates that only inmates with low and minimum recidivism scores are eligible to have earned time credits under the FSA applied toward pre-release custody or supervised release," and "[i]f a prisoner does not have a minimum or low recidivism risk level, he must petition the Warden for individual approval of the application of his earned time credits.") (citing See 18 U.S.C. § 3624(g)(1)(D)(i)(II) and quoting *Purdy v. Carter*,

---

under § 3632(d)(4), an inmate can earn time credits for participation in recidivism reduction programming, and such credits are applicable toward time in prerelease custody or supervised release, if the inmate is eligible under 18 U.S.C. § 3624(g). 18 U.S.C. § 3632(d)(4)(A), (C). Under § 3624(g), time credits toward prerelease custody or supervised release can only be applied to inmates who have been designated as minimum or low risk to recidivate for the previous two risk assessments. 18 U.S.C. § 3624(g)(1)(D). Torok does not dispute that he has been designated either high or medium risk for recidivating throughout his incarceration, but "because Torok's recidivism risk level renders him ineligible under § 3624(g), the Bureau of Prisons is statutorily authorized to deny the application of Torok's earned time credits to his sentence until he brings his recidivism risk level down to minimum or low." *Torok v. Carter*, 2025 WL 3497993, at *1 (4th Cir. Dec. 5, 2025) (per curiam) (unpublished) (emphasis added).

10

2024 WL 4651275, at *5 (D. Md. Nov. 1, 2024) (citing 18 U.S.C. § 3624(g)(1)(B), (D)(i)(I), and (D)(ii), and *Welch v. Heckard*, 2023 WL 6885005, at *4 (S.D. W. Va. Sept. 19, 2023) ("If a prisoner does not have a minimum or low recidivism risk level, he must petition the Warden for individual approval of the application of his earned time credits." (footnote and citation omitted)), *R&R adopted*, 2023 WL 6882684 (S.D. W. Va. Oct. 18, 2023)).[10]

Petitioner challenges the BOP's failure to apply his time credits because he did not have a low or minimum recidivism status—arguing that BOP's interpretation of the FSA is inconsistent with the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), and other cases relating to statutory interpretation, because the statute clearly requires that his FSA time credits should be applied to his prerelease custody date despite his "medium" recidivism status. Dkt. 1 at 6-7.[11] Specifically, he focuses on 18 U.S.C. § 3624(g)(1)(B), which states that, to be eligible for application of time credits, a prisoner must have "shown through the periodic risk

---

[10] *See, e.g., Cook v. Leu*, 2026 WL 458442, at *2-3 (E.D.N.C. Feb. 18, 2026) ("Under § 3624(g), . . . time credits toward pre-release custody or supervised release are only applicable to prisoners designated as minimum risk to recidivate or low risk to recidivate in two previous risk assessments," and where an inmate "does not dispute that his latest risk assessment indicated a medium recidivism risk level," the inmate's "recidivism risk level makes him ineligible under § 3624(g), [and] the statute permits the [BOP] to decline to apply" the inmate's time credits "until he meets a minimum or low risk level.") (citing 18 U.S.C. § 3624(g)(1)(D); *White v. Warden of Fed. Corr. Inst.-Cumberland*, 164 F.4th 326, 334 (4th Cir. 2026)). *White* concerned an inmate seeking to apply credits that he had not earned because he did not participate in any programming and observed that the time credits "may only be applied to reduce the prisoner's term of incarceration if he has a sufficiently low risk of recidivism *or* if the warden approves a waiver of that requirement." *Id.* (emphasis added) (citing 18 U.S.C. § 3624(g)).

[11] In *Loper Bright*, the Supreme Court overruled *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), which required courts to defer to agencies' reasonable interpretations of ambiguous statutes. 603 U.S. at 412-13. Under *Loper Bright*, courts may not defer to an agency's interpretation of the law simply because a statute is ambiguous but rather "must exercise their independent judgment in deciding whether an agency has acted within its statutory authority." 603 U.S. at 412.

11

reassessments a demonstrated recidivism risk reduction or has maintained a minimum or low recidivism risk, during the prisoner's term of imprisonment," 18 U.S.C. § 3624(g)(1)(B); Dkt. 1 at 6, 8-9. Petitioner asserts that the use of the "disjunctive" word "or" in the statute supports his position. *Id.* Petitioner's reliance on *Loper Bright* to support his argument is misplaced because *Loper Bright* only applies if the statute is ambiguous. Despite his belief to the contrary, the FSA is not ambiguous. Indeed, Petitioner ignores § 3624(g)(1)(D), the subsection of the statute that specifically addresses application of credits with respect to a transfer to prerelease custody, the precise form of relief he seeks through his § 2241 petition. This provision "unambiguously mandates that only inmates with low and minimum recidivism scores are eligible to have earned time credits under the FSA applied toward pre-release custody or supervised release." *Purdy*, 2024 WL 4651275, at *5 (citing 18 U.S.C. § 3624(g)(1)(B), (D)(i)(I), and (D)(ii)). Numerous courts agree with this proposition and have rejected arguments that the FSA is ambiguous such that *Loper Bright* is applicable. *See Williams v. FCI Beckley Warden*, 2025 WL 4033845, at *5 (S.D. W. Va. Nov. 19, 2025), *R&R adopted,* 2026 WL 88542 (S.D. W. Va. Jan. 12, 2026) (collecting cases and finding *Loper Bright* inapplicable because "Section 3624(g)(1) explicitly prohibits the BOP from applying FSA credit unless an inmate has a minimum or low-risk recidivism scores (PATTERN score)").

The Court agrees with the overwhelming weight of authority addressing this issue. Put simply, *Loper Bright* is not applicable, Petitioner was and is not entitled to have his FSA time credits applied to a transfer to prerelease custody pursuant to 18 U.S.C. § 3624(g)(1)(D)(i)(I). Regardless of an inmate's particular recidivism level (with very few exceptions not relevant to this action), inmates may earn time credits to possibly be applied toward their transfer to prerelease

12

custody or a term of early supervised release. 18 U.S.C. § 3632(d)(4)(A), (C). Simply because an inmate is eligible to earn time credits, however, does not necessarily mean that he or she may apply those time credits to his or her sentence. *See West v. Cutwright*, 2025 WL 2639883, at *5 (S.D. W. Va. July 9, 2025) ("Although all eligible inmates may earn FSA time credit, only some inmates are eligible to apply those time credits.") (citation omitted), *R&R adopted*, 2025 WL 2641713 (S.D. W. Va. Sept. 12, 2025). "[The] labyrinthine interaction between eligibility to earn and receive credits and eligibility to apply those same credits is no doubt frustrating to prisoners trying to navigate the system." *Nevel v. Brown*, 2023 WL 8505881, at *6 (N.D. W. Va. Oct. 27, 2023), *R&R adopted*, 2023 WL 7490046 (N.D. W. Va. Nov. 13, 2023).

## IV. Conclusion

For the reasons outlined above, Respondent's Motion (Dkt. 11) will be granted, through an Order that will be issued alongside this Memorandum Opinion.

Entered this ____22____ day of ____July_____ 2026.

Alexandria, Virginia

/s/ _____

Rossie D. _____

United States District Judge

13